UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

IN RE BLUE GRAND JURY                         Case No. 21-MC-0033 (PJS)

ORDER

This Court supervised the Blue Grand Jury that was impaneled in June 2019 and discharged in June 2021.[1] On May 6, 2021, the Blue Grand Jury returned indictments against four former Minneapolis police officers who had been involved in the murder of George Floyd. *See United States v. Derek Michael Chauvin, et al.*, Case No. 21-CR-0108 (PAM/TNL); *United States v. Derek Michael Chauvin*, Case No. 21-CR-0109 (WMW/ECW).

In February and April 2021—prior to the return of the indictments—two newspaper articles appeared that contained references to "matter[s] occurring before the grand jury" within the meaning of Fed. R. Crim. P. 6(e)(2)(B).[2] The Court responded

---

[1] Grand juries typically serve for one year. The service of the Blue Grand Jury was extended to two years because the pandemic made it difficult to empanel a replacement.

[2] Tim Arango and Katie Benner, *With New Grand Jury, Justice Department Revives Investigation Into Death of George Floyd*, N.Y. Times, Feb. 23, 2021, *available at* https://www.nytimes.com/2021/02/23/us/george-floyd-death-investigation-doj.html; Andy Mannix, *Feds plan to indict Chauvin, other three ex-officers on civil rights charges*, Star Tribune, Apr. 29, 2021, *available at* https://www.startribune.com/feds-plan-to-indict-chauvin-other-three-ex-officers-on-civi

by opening this case for the purpose of beginning an inquiry into whether any individual bound by the confidentiality provisions of Rule 6(e) had violated that provision—an act that is punishable as a crime. Fed. R. Crim. P. 6(e)(7); *United States v. Girardi*, 62 F.3d 943, 944 (7th Cir. 1995). In particular, the Court ordered both the United States and the State of Minnesota to provide the Court with a list of every person to whom a matter occurring before the Blue Grand Jury had been disclosed.[3] The Court further ordered the United States to show cause why the Court should not appoint an independent counsel to investigate and possibly instigate a criminal prosecution relating to the apparent disclosure of matters occurring before the Blue Grand Jury. ECF No. 1.

The parties complied with this directive and collectively identified well over 100 people who had access to grand-jury matters. Each entity involved—the Department of Justice ("DOJ"), the FBI, the United States Marshals Service ("USMS"), and the Minnesota Attorney General's Office—also initiated an internal inquiry. The FBI later agreed to conduct an external investigation. Based on the initiation of these

---

[2](...continued)
l-rights-charges/600051374/.

[3]As explained more fully in the order initiating this case, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(iv), the Court had earlier authorized the United States to disclose certain grand-jury materials to attorneys from the Minnesota Attorney General's Office.

investigations, the Court determined that it was not necessary to appoint a special prosecutor.

The investigations were thorough. The DOJ and the United States Attorney's Office for the District of Minnesota together submitted over 60 declarations from attorneys and staff members, each attesting under penalty of perjury that the declarant did not disclose to the media the grand-jury information that appeared in the newspaper articles. During their internal investigations, the federal entities collectively obtained over 100 sworn declarations likewise attesting that the declarants had not disclosed the grand-jury information to the media. The state collected over 50 sworn declarations each attesting either that the declarant had no actual knowledge of any confidential grand-jury information or that the declarant had such knowledge but did not make any unauthorized disclosures. The state also interviewed individuals who had actual knowledge of grand-jury matters. As part of its external investigation, the FBI likewise interviewed dozens of people. Investigators also searched electronic devices and reviewed hundreds of documents, including emails.

The investigations did not turn up any evidence of any violations of Rule 6(e). Unfortunately, investigators were unable to identify the sources of the grand-jury information contained in the newspaper articles. Most likely, the inability of investigators to identify the sources of the information was due (at least in part) to two

factors: First, an extraordinarily large number of people were given access to the grand-jury material by the DOJ and the Minnesota Attorney General's Office. Dozens of attorneys were involved in the state and federal prosecutions of Chauvin and his co-defendants, and those attorneys were assisted by dozens of law-enforcement officers, investigators, expert witnesses, and others. Second, the DOJ maintains a policy that restricts the use of compulsory legal process to obtain information or records from reporters.[4] Thus, the FBI was blocked from obtaining evidence from the reporters, who, of course, almost certainly knew who had provided grand-jury information to them.

The Court is disappointed that the sources of the grand-jury information were not identified, particularly because one or more of those sources may have committed a crime and may have been a prosecutor or law-enforcement officer who had sworn to uphold the law. At this point, however, the Court reluctantly acknowledges that there is nothing more that can be done to identify the sources of the grand-jury material. The Court orders that this matter be closed.

SO ORDERED.

Dated: July 15, 2022                         s/Patrick J. Schiltz
                                             Patrick J. Schiltz, Chief Judge
                                             United States District Court

---

[4] Office of the Attorney General, *Memorandum, Use of compulsory process to obtain information from, or records of, members of the news media*, July 19, 2021, *available at* https://www.justice.gov/ag/page/file/1413001/download.